# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **WENDY FRISCONE-REPASKY,** | Case No. 1:19 CV 2526 |
| Plaintiff, | |
| v. | Magistrate Judge James R. Knepp II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff Wendy Friscone-Repasky ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 10). For the reasons stated below, the undersigned reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in September 2016, alleging a disability onset date of August 19, 2016. (Tr. 213, 238-39). Her claims were denied initially and upon reconsideration. (Tr. 301-04, 306-08). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before an administrative law judge ("ALJ") on June 13, 2018. (Tr. 228-65). On October 16, 2018, the ALJ found Plaintiff not disabled in a written decision. (Tr. 213-23). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the

Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on October 29, 2019. (Doc. 1).

## FACTUAL BACKGROUND[1]

Personal Background and Testimony

Born in 1970, Plaintiff was 46 years old on her alleged onset date. *See* Tr. 215. Plaintiff had a college degree and previously worked as a contact representative for the Social Security Administration. (Tr. 232-35).

She testified she had a congenital heart defect, for which she had a pacemaker, and back pain that, at times, prevented her from doing anything. (Tr. 234-36). She tried to help at her father's salon two days per week (answering phones, folding towels, and greeting clients), but was often unable due to pain. (Tr. 237-38). Plaintiff rated her pain as seven out of ten at the hearing; she treated it with Percocet and injections. (Tr. 239). Plaintiff's physician told her if her next round of injections did not work, she should see a neurosurgeon. (Tr. 241). She had also tried other treatments, such as physical therapy, but to no avail. (Tr. 245).

Plaintiff testified she had migraines at least once per week. (Tr. 247). They could last for one day, or sometimes she had a "cluster, where they'll last for four or five days, especially with the weather". *Id.* She took Excedrin, but it did "[n]ot really" help. (Tr. 247-48). Plaintiff's physicians told her that, due to her heart condition, there were "a lot of migraine medications" she could not take. (Tr. 248). Prior to stopping work, Plaintiff made mistakes on the job due to "the pain and the headaches"; she also at times had to throw up in the bathroom due to migraine pain. (Tr. 253). Her pain – whether from a migraine or her back – was distracting; the combination of

---

1. Plaintiff's arguments center on the ALJ's alleged failure to properly consider her migraines and the alleged limitations stemming therefrom individually and in combination with her back pain. *See* Doc. 13. As such, the undersigned summarizes only the related evidence.

that and her fibromyalgia flares made her forgetful and overwhelmed. (Tr. 253-54). Toward the end of her prior job, Plaintiff missed work about once per week and went home early "a couple times a week". (Tr. 254). Plaintiff had migraines independent of her back pain, but they increased once she started getting back pain. (Tr. 257).

Relevant Medical Evidence

In August 2015, Plaintiff sought treatment with Brecksville Physical Medicine. *See* Tr. 424, 427. She complained of low back pain, migraines (for nineteen years), and cervical/upper thoracic pain. (Tr. 424, 427). In March 2016, chiropractor Adam Mack, D.C., wrote a letter describing Plaintiff's seven-month course of treatment with his practice. (Tr. 424). He noted Plaintiff had a prior treatment history of medications, sacroiliac joint injections and physical therapy with minimal improvement. (Tr. 424). He stated massage, physical therapy, and chiropractic manipulation only improved Plaintiff's condition twenty percent. *Id.*

In July 2016, a spine CT myelogram showed: (1) cervical spondylosis most prominent at C5-6 with a broad-based posterior disc osteophyte complex resulting in foraminal impingement, but no cord compression, and similar finding but to a lesser degree at C6-7; (2) mid and lower thoracic spondylosis without cord compression, and a right-sided disc extrusion at T9-10 associated with effacement of the adjacent subarachnoid space; and (3) central disc protrusion at L5-S1 without major nerve root compression. (Tr. 482-83).

Plaintiff underwent L5-S1 lumbar spine facet injections with Kutaiba Tabbaa, M.D., in November 2016 and January 2017 for her chronic low back pain and lumbar radiculopathy. (Tr. 649-52).

In February 2017, Plaintiff sought treatment with Candia Luby, CNP, in internal medicine, for a migraine lasting three days. (Tr. 760). She was occasionally vomiting and had photophobia

3

and phonophobia. *Id.* Plaintiff had tried Savella with minimal improvement. *Id.* Ms. Luby diagnosed migraine with aura and prescribed a Toradol injection; Plaintiff's pain improved after injection. (Tr. 761). Plaintiff returned to the same office approximately one month later and saw Kathleen Grieser, M.D., for a migraine lasting several days, with "visual issues th[at] come and go"; she had tried betablockers, verapamil, and Imitrex. (Tr. 776). Dr. Grieser diagnosed atypical migraine, and again prescribed a Toradol injection. (Tr. 778).

An April 2017 CT scan showed a progression of spondylosis at L5-S1 with loss of disc space height and disc vacuum phenomenon, as well as a broad-based disc bulge at L5-S1 resulting in mild to moderate canal stenosis, and a similar, but lesser change at L3-L4 and L4-L5. (Tr. 672-73).

That same month, Plaintiff told Dr. Tabbaa her lumbar and leg pain had gradually worsened since her last visit. (Tr. 795). She stated the last facet joint injection provided 60 percent improvement in her pain. *Id.* On examination, she had normal range of motion and gait. (Tr. 797). Dr. Tabbaa recommended pool therapy ("walking in the pool, at least 3x per week for 30 minutes"), reinforced the importance of a regular program for improving strength and flexibility, discussed weaning Plaintiff's oxycodone prescription, and prescribed other medication (Toradol and Relafen) and another injection. (Tr. 798). Plaintiff underwent a caudal lumbar block epidural steroid injection the following week. (Tr. 804-05).

Plaintiff also underwent lumbar facet joint injections in June 2017, from which she reported no improvement. *See* Tr. 860. On examination, Plaintiff had normal range of motion, but exhibited tenderness. (Tr. 861).

In September 2017, Plaintiff saw neurologist Michael Bahntge, M.D. (Tr. 874-80). Dr. Bahntge summarized Plaintiff's prior medical history. (Tr. 874-77). On examination, Dr. Bahntge

4

observed a limping gait, and reduced sensation. (Tr. 880). He ordered labs and an EMG of right upper and lower extremities to look for cervical and lumbar spine radiculopathies. (Tr. 880).

Plaintiff underwent further spinal injections in September 2017, December 2017, and March 2018. (Tr. 906-07, 928-29, 998-99).

In November 2017, Plaintiff returned to Dr. Grieser, reporting ongoing back pain, joint pain (for which injections helped), and stiffness. (Tr. 913). Dr. Grieser observed hand swelling and some unspecified tenderness. (Tr. 914). She diagnosed lumbar spine osteoarthritis and hand arthritis. (Tr. 915). She refilled Plaintiff's oxycodone prescription. *Id.*

In January 2018, Plaintiff saw Ms. Luby with a migraine lasting three days. (Tr. 974). She also had pain to palpation in her back on examination. (Tr. 975). Ms. Luby diagnosed migraine with aura, for which she prescribed a prednisone taper. *Id.* She further diagnosed herniated lumbar intervertebral disc and osteoarthritis of the lumbar spine. *Id.* She prescribed gabapentin. *Id.*

In April 2018, Plaintiff returned to Dr. Grieser for a follow-up, reporting chronic low back pain and difficulty walking more than fifteen minutes. (Tr. 1007). Dr. Grieser noted no abnormalities on examination and increased Plaintiff's gabapentin dosage. *Id.*

*Opinion Evidence*

In his March 2016 letter, Dr. Mack stated that "By working with Wendy it is my opinion that she will not improve and does deserve permanent disability." (Tr. 424).

In September 2016, Dr. Grieser wrote a letter regarding Plaintiff's medical conditions. (Tr. 596-97). Therein, she listed Plaintiff's diagnoses, including migraines, lumbar disc herniation, and fibromyalgia; she stated these conditions were "unlikely to improve [and] in fact likely to worsen". *Id.* As to Plaintiff's migraines, Dr. Grieser wrote they were "worse with stress[,] especially work stress." (Tr. 596). "Because of frequency of headaches she is maintained on valproic acid and pain

relief"; the migraines were "[a]t times . . . bad enough to cause absenteeism" and Plaintiff "ha[d]

issues functioning at work when the headaches occur." *Id.* She noted Plaintiff needed pain

medication "multiple times daily" to be able to manage her pain", "received periodic injections

both into the spine, sacroiliac joint[,] and has also received IV lidocaine"; pain limited her ability

to concentrate. *Id.* She further opined Plaintiff could stand for fifteen minutes, sit for ten minutes,

and walk for ten minutes at a time. *Id.*

State agency physician Mehr Siddiqui, M.D., reviewed Plaintiff's records in October 2016.

(Tr. 277-79). He found Plaintiff's migraines to be a severe impairment. (Tr. 274). He opined

Plaintiff could occasionally lift or carry twenty pounds, and frequently lift or carry ten; she could

stand and/or walk, or sit for six hours each in an eight-hour workday. (Tr. 277). He further opined

Plaintiff had various postural and environmental restrictions. (Tr. 277-78). He noted his opinion

that Plaintiff should avoid climbing ladders, ropes, and scaffolds was due to degenerative disc

disease and migraines. (Tr. 278). Based on this evaluation, Plaintiff was found not disabled. (Tr.

282).

State agency physician Leon Hughes, M.D., reviewed Plaintiff's records in March 2017 on

reconsideration. (Tr. 293-95). He affirmed Dr. Siddiqui's opinion that Plaintiff's migraines were

a severe impairment (Tr. 291), and Dr. Siddiqui's assessment of Plaintiff's residual functional

capacity (Tr. 293-95). Plaintiff was again found not disabled. (Tr. 299).

VE Testimony

A VE testified at the hearing before the ALJ. (Tr. 258-64). The ALJ asked the VE to

consider a hypothetical individual with Plaintiff's age, education, work experience, and residual

functional capacity ("RFC") as ultimately determined by the ALJ. *See* Tr. 259-62. The VE

responded that such an individual could not perform Plaintiff's past work, but could perform other

jobs such as office helper, information clerk, or mail clerk. (Tr. 263). The VE further testified that missing two days of work per month on a consistent basis would be work-preclusive. (Tr. 263).

ALJ Decision

In his October 2018 written decision, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and had not engaged in substantial gainful activity since August 19, 2016, the alleged onset date. (Tr. 215). He next found Plaintiff had severe impairments of congenital arrhythmias with pacemaker, degenerative disc disease of the spine, fibromyalgia, and affective disorder, but that none of these impairments – individually or in combination – met or medically equaled the severity of a listed impairment. (Tr. 215-17). Thereafter, the ALJ set forth Plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform the following: lift/carry 20 pounds occasionally and ten pounds frequently, can stand/walk four hours and sit six hours of an eight-hour workday, with the option to alternate between sitting and standing every hour for a few minutes with no loss in productivity, frequently push/pull/use foot pedals, occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, occasionally stoop and crawl, frequently kneel and crouch, frequently reach bilaterally (including overhead), constantly handle/finger/feel, must avoid high concentrations of cold and humidity, and all hazards (such as dangerous machinery and unprotected heights), is limited to simple routine tasks and no complex tasks, with no high quota or piece rate work, can perform no jobs involving arbitration, confrontation, supervision, or negotiation, and no commercial driving.

(Tr. 218). Considering the Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff could not perform her past work, but jobs existed in significant numbers in the national economy that she could perform. (Tr. 221-22). Therefore, the ALJ found Plaintiff not disabled. (Tr. 222).

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

8

5.     Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff raises several arguments – all related, to some degree, to her migraines. She contends the ALJ: (1) erred at Step Two in failing to find her migraines a severe impairment, (2) erred in not considering her subjective complaints of migraine-related symptoms and pain (in combination with her other reports of pain), and (3) erred in his RFC determination by discounting Dr. Grieser's absenteeism opinion. The Commissioner contends the ALJ either did not err, or that any error is harmless. For the reasons discussed below, the undersigned finds the ALJ erred in his consideration of Plaintiff's migraines and therefore reverses and remands for further proceedings.

Step Two

At Step Two of the sequential analysis, an ALJ must determine a claimant's "severe" impairments. A severe impairment is one which significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is only considered non-severe if it is a "slight abnormality that minimally affects work ability regardless of age, education,

and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The Sixth Circuit has characterized this as a "*de minimis* hurdle in the disability determination process." *Id.* "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009) (quoting SSR 96-8p, 1996 WL 374184, at *5) (emphasis added). In other words, if a claimant has at least one severe impairment, the ALJ continues the disability evaluation and must consider limitations caused by the claimant's impairments – severe and not.

The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at Step Two and proceeds through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("[S]o long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error[.]"); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (holding that as long as ALJ considers all impairments, failure to deem a single impairment non-severe is "legally irrelevant").

The ALJ in this case found severe impairments and proceeded through the remaining steps of the analysis. *See* Tr. 215-23. Given this, the undersigned turns first to the second question: even assuming the ALJ did err in not designating Plaintiff's migraines as a severe impairment, did he properly consider all of Plaintiff's impairments in combination – severe and non-severe – in formulating the RFC? *See* 20 C.F.R. § 404.1545(e) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable

10

impairments that are not 'severe'[.]"); *see also* SSR 96-8p, 1996 WL 374184, at \*5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe.")[2]. The answer to this question is "no."

"[F]or a Step Two error to be harmless—and therefore not subject to reversal—the ALJ must have actually considered the cumulative effect of all of the claimant's impairments, severe and not severe, in assessing the claimant's RFC." *Nejat*, 359 F. App'x at 577. Remand is required when an ALJ, after omitting an impairment at Step Two, fails to consider it at a later step. *See, e.g.*, *Katona v. Comm'r of Soc. Sec.*, 2015 WL 871617 ("While the ALJ devoted a detailed discussion to his evaluation of Plaintiff's mental complaints at Step Two . . . the remainder of the ALJ's opinion, including at Steps Three and Four, is devoid of any reference to Plaintiff's alleged mental impairments, suggesting that the ALJ did not consider those impairments while determining Plaintiff's RFC, contrary to what is required under the social security regulations."); *Hults v. Astrue*, 2016 WL 825155, at \*6 (S.D. Ohio) ("Here, the ALJ did not consider Plaintiff's mental limitations (even if non-severe) after step two or account for any mental limitations in Plaintiff's RFC. Accordingly, the ALJ's errors at step two are not harmless."), *report and recommendation adopted sub nom.*, *Hults v. Comm'r of Soc. Sec.*, 2016 WL 814708.

---

2. Specifically, the ruling recognizes:

> While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at \*5.

The record contains the following evidence of Plaintiff's migraines and the limitations imposed thereby. First, Plaintiff testified she had a migraine at least once per week; they could last for one day or up to five days. (Tr. 247). Plaintiff further testified she previously made mistakes on the job due to her migraines, and at times the pain caused her to throw up in the bathroom at work. (Tr. 253). Second, Plaintiff sought medical treatment in February 2017, March 2017, and January 2018 for multi-day migraines. *See* Tr. 760, 776, 974. Third, treating physician Dr. Grieser noted Plaintiff's migraines were "worse with stress[,] especially work stress", were "at times . . . bad enough to cause absenteeism" and Plaintiff "ha[d] issues functioning at work when the headaches occur." (Tr. 596).

The ALJ did not discuss Plaintiff's migraines – either as a severe impairment, or a non-severe impairment, at Step Two or any subsequent step. The word "migraine" appears only once in the ALJ's decision, in the ALJ's statement identifying the reasons Plaintiff sought disability. *See* Tr. 218 ("The claimant originally alleged disability due to cervical disc disease with nerve compression, lumbar disc herniation, sciatica, chronic pain, fibromyalgia, chronic migraines, arthritis, complete heart block with pacemaker, sacroiliac joint dysfunction on both sides, and depression/anxiety."). He did not mention Plaintiff's testimony regarding her migraines in his summary of her subjective symptoms (Tr. 218), nor her medical visits for migraines lasting three or more days, *see* Tr. 219[3]. Because the ALJ did not consider Plaintiff's migraines anywhere in the opinion (as discussed further below), the ALJ's failure to identify them as a severe impairment at Step Two error is not harmless. *See Nejat*, 359 F. App'x at 577 ("[F]or a Step Two error to be

---

3. The ALJ cites neither of Plaintiff's 2017 migraine-related visits. *See* Tr. 760, 776. He cites the second page of Plaintiff's January 2018 visit, but only for "evidence of back pain radiating to her right leg" and does not acknowledge that the primary reason for the visit was a three-day migraine. (Tr. 219) (citing Tr. 975).

harmless—and therefore not subject to reversal—the ALJ must have actually considered the cumulative effect of all of the claimant's impairments, severe and not severe, in assessing the claimant's RFC."). As another court explained regarding a Step Two error: "While the ALJ was not necessarily obligated to include any particular (or even any) limitation in the RFC as a result of this . . . impairment, she was required to at least make clear that she fairly considered the impairment in determining the RFC she did adopt." *Tulloch v. Comm'r of Soc. Sec.*, 2017 WL 5054274, at *3 (E.D. Mich.) (remanding for the ALJ to "thoroughly consider the effects of these impairments on [the plaintiff's RFC] and, if she believes it is unnecessary to include any limitations related to these impairments, she should explain why this is the case.").

<u>RFC Determination</u>

Plaintiff contends the ALJ's failure to identify Plaintiff's migraines as severe at Step Two led to harmful error at Steps Four and Five because the ALJ failed to evaluate her subjective report of migraine symptoms under Social Security Ruling 16-3p, and failed to properly evaluate Dr. Grieser's absenteeism opinion which was based in part her migraine symptoms. The Commissioner more broadly argues for harmless error, contending (1) Plaintiff has not satisfied her burden to establish migraines imposed additional work-related limitations, (2) the ALJ relied on the opinions of the state agency reviewing physicians who found Plaintiff's migraines to be a severe impairment, but still found Plaintiff could work consistent with the RFC determined by the ALJ; and (3) the ALJ is not required to address each subjective symptom alleged by a claimant.

The Commissioner is correct that the ALJ's RFC is supported in part by the state agency physicians who found Plaintiff's migraines to be a severe impairment. *Compare* Tr. 218 (RFC) *with* Tr. 277-78, 293-95; *see also* Tr. 220 (affording "some weight" to these opinions). But the Court declines to find harmless error on this basis. It is the ALJ, not the state agency physicians,

who is ultimately tasked with making a disability determination based on the record as a whole. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity."). Moreover, these state agency physicians did not have – and therefore did not consider – Plaintiff's testimony regarding her migraines and their effect on her work.[4] Additionally, Dr. Siddiqui issued his opinion in October 2016; he therefore could not have reviewed the records from February 2017, March 2017, and January 2018 regarding Plaintiff's multi-day migraines. Nor is it clear that Dr. Hughes had any of these records at the time of his March 2017 reconsideration decision. *See* Tr. 286-89 (summarizing evidence received).

The Commissioner is certainly correct that, as a general proposition, an ALJ is not required to accept a claimant's subjective complaints, *Jones*, 336 F.3d at 476, and that the ALJ need not "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts", *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). But the regulations require the ALJ to evaluate a claimant's symptoms, and the explanation must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248; *see also* SSR 16-3p, 2017 WL 5180304, at *10.

---

4. They did have Plaintiff's statement to a state agency representative that she had migraines four times per week that lasted all day. *See* Tr. 270.

Because the ALJ did not mention Plaintiff's migraines or their resulting symptoms at all, the Court cannot find "his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky*, 167 F. App'x at 508. The ALJ's decision contains a summary of Plaintiff's subjective complaints (though does not mention migraines), and states her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the objective evidence of record and other evidence". (Tr. 218-19). Given the complete lack of discussion regarding Plaintiff's migraines anywhere in the ALJ's decision, the undersigned cannot determine whether the ALJ considered Plaintiff's subjectively-reported migraine symptoms and discounted them (or found they imposed no further work-related limitation), or simply did not recognize them at all. SSR 16-3p, 2017 WL 5180304, at *10.

Plaintiff further argues the ALJ failed to properly evaluate Dr. Grieser's absenteeism opinion. The ALJ said he gave Dr. Grieser's conclusions on absenteeism and concentration issues "some weight . . . as they are somewhat consistent with the objective evidence of record", but stated she was "not clear as to the claimant's maximum physical capacity and number of absences or extent of her concentration problems.". (Tr. 221). As discussed above, Dr. Grieser noted that Plaintiff's migraines were "worse with stress[,] especially work stress", were "at times . . . bad enough to cause absenteeism", and Plaintiff "ha[d] issues functioning at work when the headaches occur." (Tr. 596). Again, however, the ALJ's decision fails to reference the fact that Dr. Grieser's opinion was based, in part, on Plaintiff's migraines. Because remand is required for further analysis of Plaintiff's migraines, and that analysis may impact the ALJ's evaluation of Dr. Grieser's opinion, the Court declines to determine at this juncture whether the ALJ's treatment of this opinion is supported by substantial evidence. On remand, after taking into consideration Plaintiff's

migraines, the ALJ may reach the same conclusion regarding Dr. Griser's opinion, or may reach a different conclusion.

Again, "for a Step Two error to be harmless—and therefore not subject to reversal—the ALJ must have actually considered the cumulative effect of all of the claimant's impairments, severe and not severe, in assessing the claimant's RFC." *Nejat*, 359 F. App'x at 577. The ALJ's decision here does not show he considered Plaintiff's migraines in assessing the RFC. The Commissioner contends this Court should find the error harmless because the ALJ's RFC adequately accounts for Plaintiff's migraine-related limitations and is supported. However, "the Court declines to speculate about what limitation, if any, the ALJ would have found or the effect of that limitation on available jobs." *Van Kampen v. Comm'r of Soc. Sec.*, 2020 WL 5351082, at *4 (W.D. Mich), *report and recommendation adopted sub nom.*, *Kampen v. Comm'r of Soc. Sec.*, 2020 WL 2897176; *see also M.L.I. v. Saul*, 2019 WL 6217908, at *5 (D. Kan.) (declining to "speculate as to how . . . evidence would have been treated has the ALJ actually considered it"). As such, remand is required for the ALJ to address this evidence in the first instance.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB not supported by substantial evidence and reverses and remands that decision for further proceedings.


 s/ James R. Knepp II
United States Magistrate Judge

16